NAPOLI LAW PLLC
Hunter Shkolnik
Annie Causey
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 397-1000
hunter@napolilaw.com
acausey@napolilaw.com

IMBESI LAW P.C.
Brittany Weiner
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 736-0007 (Phone)
brittany@lawicm.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
AISSA KHIRANI, individually, and on behalf of all others similarly situated,

                    Plaintiffs,

              v.

FANDUEL, INC.

                    Defendant.
----------------------------------------------------------------X

**Civil Case No.:**

**COMPLAINT**

**JURY DEMAND**

Plaintiff AISSA KHIRANI ("Plaintiff") on his own behalf and on the behalf of all others similarly situated, by and through his attorneys, Imbesi Law P.C. and Napoli Law PLLC, as and for this putative class action against FANDUEL, INC. ("FanDuel" or "Defendant") alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action on his own behalf and on the behalf of a nationwide class of persons who, like Plaintiff, have sustained ascertainable losses arising out of FanDuel's

systematic and continued violations of New York General Obligations Law (Gen. Oblig. Law) and various criminal laws.

2. FanDuel is operating an illegal online sports betting business within the State of New York.

3. FanDuel defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a feeble attempt to circumvent New York Penal Law ("NYPL") which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."

4. FanDuel's sports betting contests are based upon the performance of team and individuals that participate in NCAA college football, NCAA college basketball, NFL, NBA, MLB and the NHL.

5. In traditional fantasy sports leagues, contestants draft their teams before the season, maintaining the same core roster for months.

6. In contrast to season-long fantasy sports, FanDuel accepts wagers from bettors for various sporting events using a scheme it created that assigns values (points) based upon the performance of athletes and teams engaged in amateur and professional athletic competitions.

7. After the sporting events are concluded, FanDuel calculates a score using the scheme it created that awards points based upon the various individual college and professional athletes' performance and pays bettors that have the highest total number of points.

8. Bettors select an entry fee, which is up to $5,000, and the number of games or teams they wish to play. If their roster generates more points than their rivals on that day or week, they win all the money in the pot, minus FanDuel's average 6.5% percent cut.

9. FanDuel is outdueling rivals like DraftKings and Draft, claiming an 80 percent market share of daily fantasy sports betting and boasting more than 1 million paid active users – numbers that in 2014 translated to $622 million in entry fees, and cash payouts in excess of $564 million. FanDuel expects to pay out more than $1 billion in 2015, corresponding to roughly $100 million in revenue.

10. Recently, lawmakers have scrutinized FanDuel's business model and operations, alleging all too familiar similarities between FanDuel and online poker, and other gambling websites.

11. FanDuel incorrectly claims is sports bookmaking operations were made legal by the Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA).

12. Indeed, former fifteen-term Representative Jim Leach recently stated that his anti-gambling act – the Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA) – was supposed to stop gambling on the internet, not promote it, referring to FanDuel.

13. Poignantly, Leach told The Associated Press: "There is no credible way fantasy sports betting can be described as not gambling." "Only a sophist can make such a claim." The federal legislation is codified at 31 U.S.C. 5361 *et seq*. The Act expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gambling within the United States. 31 U.S.C. 5361 § 5361(b).

14. Moreover the Federal Bureau of Investigation and the Department of Justice are probing whether the business model of daily fantasy sports operators like FanDuel violates this and other federal laws.

15. FanDuel's operations are also unlawful under New York's criminal provisions. FanDuel defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a deceptive

attempt to circumvent New York Penal Law ("NYPL") § 225.00, which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" – the precise conduct of FanDuel.

16. NYPL § 225.10 makes it a class E felony to profit from unlawful gambling activity by accepting more than five (5) bets totaling more than five thousand dollars ($5,000), an amount that FanDuel easily exceeds each day it operates. But knowing this, although mistake of law is no defense to criminal liability, FanDuel nonetheless represented to its customers that its sports betting scheme was legal.

17. In additional to criminal conduct, FanDuel's operations, decidedly violates New York GOL § 5-401, which is civil law creating private rights of action against FanDuel. Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

18. Persons, like Plaintiff and the putative class, can and seek to recover damages from FanDuel in the form of restitution and lost wagers.

19. New York General Obligations Law § 5-411 provides: "All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void."

20. New York GOL § 5-421 provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof,

may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

21.     In other words, every person who shall, lose at any time, the sum or value of twenty-five dollars or more, and renders that amount to the winner within three calendar months, may, after such rendering, sue for and recover the money lost and rendered.

22.     Plaintiff and the nationwide putative class are entitled, as a matter of law, to recover the money that they lost, and in addition, are entitled to any and all fees that inured to FanDuel on account of the contracts being void.

## PARTIES

23.     Plaintiff Aissa Khirani is citizen of New York State and resident of New York County.

24.     The putative class is a nationwide group of persons with claims similar or identical to Plaintiff's.

25.     Defendant FanDuel, is a domestic corporation with its principal place of business located in New York, New York. Defendant is authorized to conduct business and does conduct business throughout the State New York.

## JURISDICTION AND VENUE

26.     The Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.,* which commands federal jurisdiction in a class action where at least one plaintiff *or* one member of the class is diverse from at least one defendant, where there are at least 100 members of the proposed class, and the amount in controversy exceeds the sum or value of $5,000,000 to a reasonable probability.

27. FanDuel accepts payments and other benefits from the operation of its business out of the State of New York, where these payments, other benefits, and its customer contracts originate from customers who are citizens of ever state in the nation except for Montana, Washington, Iowa, Arizona, and Louisiana.

28. Accordingly, at least one member of the class is diverse from at least one defendant, and CAFA jurisdiction properly lies with this Court.

29. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in, among others, this district and critically, Defendant's headquarters are located within this district.

## STATEMENT OF FACTS

30. FanDuel is operating an illegal online sports betting business within the State of New York.

31. FanDuel accepts wagers from bettors for various sporting events using a scheme it created that assigns values (points) based upon the performance of athletes engaged in amateur and professional athletic competitions.

32. After the sporting events are concluded, FanDuel calculates a score using the system it created that awards points based upon the various individual college and professional athletes' performance. FanDuel then pays bettors that have the highest total number of points.

33. Plaintiff Aissa Khirani is an individual who has utilized FanDuel's website. He has incurred losses of more than twenty-five (25) dollars using FanDuel's services within the last three (3) months, pursuant to NYGOL § 5-421.

34. Plaintiff alleges that gaming on FanDuel's platform requires no skill – that it is a game of pure chance. Indeed, many FanDuel customers lack even rudimentary understanding

of sports, or betting strategy in general, and yet, participate in FanDuel's operations, and lose and win based on pure luck.

35. Plaintiff Aissa Khirani exercised his right to opt out of FanDuel's arbitration agreement, which, regardless of this act, this contract is void and is thus not enforceable against Plaintiff as a matter of law.

36. In compliance with the void contract's terms of service, Plaintiff attempted in good faith to resolve the issue with Defendant's customer service, but was repeatedly unsuccessful in reaching a representative.

**Initial Dispute Resolution**

Our Customer Support Department is available by phone (917-525-4538) or via the web to address any concerns you may have regarding the Service. Our Customer Service Department is able to resolve most concerns quickly to our players' satisfaction. The parties shall use their best efforts through this Customer Service process to settle any dispute, claim, question, or disagreement and good faith negotiations which shall be a condition to either party initiating a lawsuit or arbitration.

**I.    FanDuel's Unlawful Conduct and Deception**

37. FanDuel attempts to legitimize its gambling scheme to its users by using images of NCAA college athletes on its website, creating the misleading appearance of an influential NCAA endorsement:



(Patrick Nixon-Youngman, Class of 2012 Illinois Fighting Illini)

38. FanDuel also offers bettors the opportunity to wager on the performance of college athletes, listing hundreds of students athletes with associates point spreads:



39. FanDuel claims on its website that the UIGEA legalized its conduct, when clearly, even a cursory review of the statute demonstrates that it has not legalized FanDuel's business operations.

40. Specifically, FanDuel's website represents:

**Is FanDuel legal?**

**The Short Answer**

Yes, Fantasy Sports is considered a game of skill and received a specific exemption from the 2006 Unlawful Internet Gambling Enforcement Act (UIGEA). FanDuel uses exactly same rules as season long fantasy sports game, the only difference is that our games last only a day. Thanks to fantasy sports being specifically excluded from laws affecting online sports betting, FanDuel is not illegal in any way. We're also members of the The Fantasy Sports Trade Association (FSTA).

41. FanDuel represents that it "is not illegal in any way."

42. FanDuel's representation that the UIGEA legalized bookmaking and gambling under the guise of "fantasy sports" is false and is misleading.

43. The UIGEA did not legalize fantasy sports, it simply provided an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

44. The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

45. Under the UIGEA's definition, unlawful internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law.

46. States that have laws prohibiting sports betting schemes, including FanDuel's scheme, prohibit FanDuel from accepting payments from or entering into contracts with persons from those jurisdictions.

**II.   New York's Law and Washington Laws Prohibiting Gambling.**

47. As explained, *supra*, New York's laws prohibit: all wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful; and, prohibit profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."

48. Washington, one of five jurisdiction in which FanDuel does not operate because FanDuel believes that it is unlawful for it to do so, prohibits fantasy sports wagering because it falls under Washington's definition of gambling, which is "risking something of value on the

outcome of a contest of chance or a future contingent event not under the person's control or influence to receive something of value in the event of a certain outcome (RCW 9.46.0237).

49. Indisputably, Washington's law and New York's law mirror one another. Thus, FanDuel faces an insurmountable obstacle to even attempt a colorable allegation that its conduct operating out of the State of New York is lawful in any manner whatsoever.

### III. FanDuel's Scheme is a Game of Chance

50. FanDuel's sports betting scheme is a game of chance that involves little skill. The chance element predominates over any skill set.

51. FanDuel's sports wagering scheme involves selecting a set number of athletes that will play in a sporting event.

52. FanDuel establishes a point system that correlates with the athletes' performance during the athletic events.

53. FanDuel determines which athletes its bettors can select and assigns a handicap (spread) based upon the athletes perceived potential to score points.

54. FanDuel eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular wagering event.

55. By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, bettors are engaging in a gambling scheme predominately based upon chance.

56. New York's penal law and civil law (and the UIGEA) prohibit FanDuel's sports betting scheme because it is a game of chance.

57. According to a survey conducted by the Sports Business Journal, only 1.3% of players realized gains from their participating in online fantasy sports.[1] In other words, they realized losses.

58. Daily Fantasy Sports (DFS), including the sports betting schemes implemented by FanDuel, return casino-type "odds" and involve little skill.

59. Evidence that a DFS gamer's skill has virtually no effect on the outcome is revealed in the results of a study posted on rotogrinders.com:

> In a statistical simulation in which a theoretically skilled player participated in over one-million (1,000,000) fantasy sports games with an objective to achieve nineteen percent (19%) return on investment, it took approximately one-thousand three-hundred (1,300) games for the players to achieve the desired return on investment.[2]



60. A player may win with a randomly generated roster, just as one may win with a carefully curated roster.

61. New York's civil law and its penal law make games of chance unlawful and illegal even if "the skill of the contestants" is *a* factor in determining the outcome.

---

[1] http://www.sportsbusinessdaily.com/Journal/Issues/2015/07/27/Opinion/From-the-Field-of-Fantasy-Sports.aspx
[2] https://rotogrinders.com/articles/daily-fantasy-tournament-variance-134798

62. FanDuel's gambling scheme is a game of chance because an individual athlete's performance will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, or other off field circumstances.

63. Bettors have no measure of control over all of the variables that affect the performance of the college and professional athletes, rending the FanDuel scheme a game of chance.  Gaming professional's agree.

64. The Nevada gaming industry has not endorsed DFS schemes, including those organized by FanDuel.

65. Joe Asher, CEO of sports book operator William Hill U.S., provided an explanation: "you put up something of value to win something of value…the classic definition of gambling."

66. MGM International Chairman Jim Murren agreed with Asher's sentiments by adding that his organization has been advised by regulators not to get in bed with DFS, and that sports officials are "absolutely, utterly wrong" when they argue DFS is not a form of gambling.

**IV.    Gaming Contracts are Void**

67. FanDuel's contracts with bettors are predicated upon illegal activity and are not enforceable against its gamers, pursuant to NY GOL § 5-411.

68. New York penal law does not prohibit individuals from placing bets but makes it a crime to accept wagers from members of the public as a business.

69. FanDuel is operating its gambling business within the state of New York and accepts bets from individuals located within the State of New York as well as individuals located in foreign states.

70.     Each gambling contract FanDuel executes with bettors in any jurisdiction violates New York civil and criminal law and is unenforceable against its customers.

71.     Plaintiff and current and former FanDuel customers, bring this action alleging FanDuel's violations of common law and New York General Obligations Law.

72.     Plaintiff alleges that players of FanDuel are entitled to monetary relief pursuant to New York law for losses incurred while gambling using FanDuel's services.

73.     Plaintiff seeks damages and other appropriate relief on behalf of himself and other similarly situated aggrieved individuals who have used or who are using the services provided by Defendant.

74.     Plaintiff seeks the recovery of all money wagered with FanDuel for the previous three (3) years because FanDuel was unjustly enriched by knowingly collecting and retaining money used for illegal gambling.

## CLASS ALLEGATIONS

75.      Plaintiff Aissa Khirani brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other similarly situated individuals, as defined:  all persons who entered into contracts with FanDuel, paid FanDuel fees or other consideration in connection with those contracts over the past six years, and, who rendered their losses to FanDuel within the past three months.

76.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, its affiliates, employees, officers, agents, and directors in their governmental

capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

77. Plaintiff is a member of the Class he seeks to represent. This action is properly maintainable as a class action. The proposed Class is so numerous that joinder of all members is impracticable.

78. There are questions of law or fact common to the Class that predominate over any questions affecting only individual member. Common questions of fact or law include, but are not limited to the following:

    a. Whether Plaintiff and members of the class have entered into contracts with Defendant over the past six years;

    b. Whether such contracts are *per se* void, pursuant to New York criminal law;

    c. Whether such contracts are void pursuant to New York civil law;

    d. Whether Plaintiff and members of Class paid monies to Defendant in consideration of those contracts;

    e. Whether Defendant's operations are a game of chance under all applicable laws and rules;

    f. Whether Defendant's operations violate New York's criminal law;

    g. Whether Defendant's operations violate New York's civil law; and

    h. Whether Plaintiff and members of the Class are entitled to restitution and entitled to recovery of lost wagers from FanDuel.

79. The representative Plaintiff's claims are typical of those of the proposed Class and are based upon the same legal theories. The representative Plaintiff's claims arise out of the same practices and course of conduct of Defendant.

80. The representative Plaintiff's damages arise out of a pattern of nearly identical and repetitive policies and practices conducted by Defendants.

81. The representative Plaintiff can adequately represent the Class. The representative Plaintiff and his attorneys are experienced in class actions and are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint.

82. Class certification is appropriate pursuant to Rule 23(b)(2) because Class members are entitled to injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

83. Class certification is also appropriate pursuant to Rule 23 because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class members have been damaged and are entitled to recovery as a result of Defendants' common and discriminatory policies and practices.

## COUNTS

### COUNT I
### RESTITUTION PURSUANT TO NEW YORK GOL §§ 5-441

84. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

85. New York GOL § 5-401, which is civil law creating private rights of action against FanDuel.  Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

86. New York General Obligations Law § 5-411 provides: "All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void."

87. Plaintiff and members of the Class entered into contracts with FanDuel that are void.

88. Plaintiff and members of the Class paid monies in consideration of these contracts that are void.

89. Accordingly, Plaintiff and members of the Class are entitled to damages in the form of restitution for monies paid in connection with these void contracts over the course of the past six (6) years.

## COUNT II
### RESTITUTION AND OTHER RELIEF BASED UPON NEW YORK'S CRIMINAL LAW

90. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

91. NYPL § 225.00 defines gambling as "stak[ing] or risk[ing] something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."

92. NYPL § 225.10 makes it a class E felony to profit from unlawful gambling activity by accepting more than five (5) bets totaling more than five thousand dollars ($5,000), an amount that FanDuel easily exceeds each day it operates.  But knowing this, although mistake of law is no defense to criminal liability, FanDuel nonetheless represented to its customers that its sports betting scheme was legal.

93.     FanDuel defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a deceptive attempt to circumvent New York Penal Law ("NYPL") § 225.00, which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" – the precise conduct of FanDuel.

94.     An entity is guilty of promoting gambling in the first degree when it knowingly advances or profits from unlawful gambling activity. Because of the nature of the gambling services offered by FanDuel, it has committed promoting of gambling in the first degree pursuant to NYPL 225.10.

95.     Criminal conduct creates per se findings and liability for civil liability.

96.     Because FanDuel's conduct is criminal, Plaintiff and members of the Class losses are recoverable against FanDuel, including contract considerations.

## COUNT III

### RECOVERY OF LOSSES PURSUANT TO NEW YORK GOL §§ 5-421

97.     Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

98.     New York GOL § 5-421 provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

99.     Plaintiff and members of the Class have sustained losses, and FanDuel has accepted those losses as its profits, within the past three (3) months.

100. Because every person who shall, lose at any time, the sum or value of twenty-five dollars or more, and renders that amount to the winner within three calendar months, may, after such rendering, sue for and recover the money lost and rendered, Plaintiff and members of the Class are entitled to these damages from FanDuel.

## COUNT IV
## FRAUD AND MISREPRESENTATION

101. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all proceeding paragraphs as if fully set forth herein.

102. Defendant made material representations that were false, that Defendant knew were false or were reckless as to the truth, and made with the intent to induce Plaintiff and the class to rely upon and act upon.

103. Specifically, and as detailed above, Defendant represented that it was not gambling and was legal under applicable state and federal laws.

104. Plaintiff and the proposed class acted in reliance on the false, material representations and omissions made by Defendants, which caused them injury.

105. Plaintiff and the proposed class would not have deposited money or engaged in any activity on Defendants' websites if they had known that the services offered by FanDuel were illegal in nature.

106. Defendant was aware that the legality of the games was a material fact in inducing Plaintiff and the proposed classes to give them money in exchange for services and agreeing to the alleged contract.

107. As a result of Defendant's fraudulent representations and fraudulent omissions, Plaintiff and the proposed classes were induced into a contract that they otherwise would not have made and suffered financial injury, harm and damages as described in this Complaint.

# REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the proposed class, requests relief against the Defendant as follows:

a. An award of monies returned to players resulting from loses incurred through gambling on the FanDuel website pursuant to NYGOL § 5-421;

b. An award of damages in the form of restitution for the past six (6) years because the contracts are void;

c. An award of damages and other appropriate relief for FanDuel's violations of New York State common law;

d. Notice to the Classes of the action;

e. An injunction against Defendant prohibiting Defendant from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. Reasonable attorneys' fees and costs of this action;

g. Pre-judgment and post-judgment interest as provided by law; and

h. Such other and further relief that the Court may deem just and proper.

# JURY DEMAND

Plaintiff, on behalf of himself and the proposed class, demands a trial by jury on all claims so triable.

Dated: New York, New York
October 15, 2015

Respectfully submitted,

NAPOLI LAW PLLC

/s/ Annie Causey

Hunter J. Shkolnik
Annie E. Causey
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 397-1000 (Phone)


IMBESI LAW P.C.

__/s/ Brittany Weiner_____
Brittany Weiner
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 736-0007 (Phone)
(212) 658-9177 (Fax)

*Attorneys for Plaintiff and the putative class*